[Civ. No. 8449. First Appellate District, Division Two.—September 20, 1932.]

MARGUERITE J. SNIDER, Appellant, v. H. D. SEVERANCE et al., Respondents.

Piccirillo & Wolf and Anthony Brazil for Appellant.

C. F. Lacey for Respondents.

STURTEVANT, J.—The petitioner commenced a proceeding to obtain a writ of mandate directed to the defendant board of trustees of Monterey Grammar School commanding it to assign the petitioner to her classes as a probationary teacher. The trial court made findings in favor of the defendants and from the judgment entered thereon the petitioner has appealed.

The findings made by the trial court were as follows:

"I.

"That prior to May 1st, 1931, the petitioner resigned from the employment referred to in the petition, which resignation was to take effect at the end of that school year, to-wit, June 12th, 1931.

"II.

"That the averments of Paragraph II of the Answer are true." (Paragraph II was as follows: "The respondents allege that at the commencement of the school year 1931–1932, towit, on August 31st, 1931, the petitioner absented herself and failed to report for duty as teacher in the school referred to in the petition.")

"III.

"That prior to June 10th, 1931, the petitioner declined and refused the employment referred to in the petition for the school year of 1931–1932, and notified the respondents that she did not intend to teach longer at the school referred to in the petition and declined and refused to accept further employment, after June 12th, 1931, as teacher by the respondents.

"IV.

"It is not true that at the commencement of the school year 1931–1932, to-wit, on August 31st, 1931, the petitioner reported for duty as a probationary teacher, and it is not true that prior to October 26th, 1931, the petitioner ever demanded of the respondents, or of either of them, that she should be employed as teacher or assigned as teacher in the school referred to in the petition."

The petitioner attacks portions of findings number I and number III. She says: "The findings of the trial court we assert are based on evidence which is contradictory and

which we challenge as to questions of law.'' The defendants reply, ''Under the constitution, our courts of appeal have appellate jurisdiction only of questions of law. While the question of whether there is any evidence to justify a verdict or findings presents an issue of law, the moment that a conflict in the evidence appears, there is no longer any question of law presented for the consideration of an appellate court.'' Continuing, the defendants state there is therefore nothing to discuss. The reply is sufficient, but we think the case does not even present a conflict as to material points.

During the school year 1930–1931 the petitioner was employed by the defendant board and she acted as one of the teachers. No question regarding her efficiency was involved. Mr. J. H. Graves was the superintendent of the Monterey Grammar School District. Subject to the ratification of the board of trustees he employed the teachers. The contract of employment was made by the use of a blank including two parts. The first part notified the teacher of his or her employment and was signed by the clerk of the board. The second part was in the form of an acceptance, and contained a blank line for the signature of the teacher. Said contracts were made in triplicate. On the twenty-third day of April, 1931, Mr. Joseph, the principal of Monterey Grammar School, received triplicate contracts for each teacher to be employed during the year 1931–1932. He presented to the petitioner the triplicate copies which had been signed by the clerk of the board and asked the petitioner to sign the acceptance. She stated that she was not ready to do so, that she intended to get married and on the opening of the new term she would be a married woman and that she desired to inform the superintendent. Thereupon Mr. Joseph picked up the blanks and later reported to Mr. Graves. On May 1, 1931, the petitioner called on Mr. Graves and personally told him of her intentions and of her desire to continue in her position. Mr. Graves stated that he was opposed to employing more married women, but that the board of trustees was the employing power and that he would lay the matter before the board. He did so and the next day the petitioner called and asked what action the board had taken. He informed her and thereupon she left. When Mr. Joseph

returned the blank contracts to Mr. Graves the latter tore them up and at once commenced a correspondence to obtain a teacher in the petitioner's place. The petitioner vigorously complains because Mr. Graves tore up those unexecuted forms of contract. The record discloses that they were printed blanks. We may assume that Mr. Graves had others to be furnished on application. Moreover, it is perfectly plain that a much more perfect document could have been written by the petitioner or anyone else in a very few minutes. However, at no time did the petitioner execute anything purporting to be an acceptance, tender it, and ask to be recognized as a teacher. On August 21, 1931, she appeared at the superintendent's office and asked to be placed on the substitute list. The permission was granted and she was afterward called and acted as a substitute on October 26, 1931. The school term opened August 31, 1931, and at no time did the petitioner appear or act as a probationary teacher. She took no action whatsoever until October 23, 1931, nearly two months after the school had commenced and then she addressed to the defendant board a letter in which she asked it "to reinstate me as a probationary teacher. . . . " At this time the petitioner contends that the foregoing facts did not constitute a resignation. She argues that the defendant board did not accept her resignation and that it did not fix the time when such resignation should take effect and therefore that no resignation occurred. (School Code, sec. 5.640.) ▆ No resignation was necessary. She had been elected for one year. Before the end of that year she was elected for the next year, but she refused to accept that election. Thereupon she ceased to have any claim as to future tenure. Under the contract of employment which the petitioner held April 23, 1931, she was classified as a probationary employee. She was, under the law, required to hold, and did hold, a certificate. If the defendant board took no other action prior to June 10, 1931, she would be "deemed reelected from year to year". (Sec. 5.401.) If the defendant board saw fit not to rely on the statute nor to cause the plaintiff to rely on the statute it had the power to re-elect her. That power is clearly implied in section 5.401 which is as follows: "Persons in positions requiring certification qualifications may be elected on or after May second for the next ensuing school

year, and each person so elected shall be deemed re-elected from year to year except as hereinafter specified." Section 5.402 is as follows: "Any person not under permanent tenure who shall fail to signify his acceptance within twenty days after notice of his election or employment shall have been given him . . . shall be deemed to have declined the same." It likewise implies the power. No section cited to us in any way denies it. If, when notified of such action by the board this petitioner had said, "No thank you, I am going to get married," no one would have contended that such statement was otherwise than a voluntary declination of employment during the ensuing year. She did not say, "No thank you"; but the trial court had the right to place that meaning on the words she used, when taken in connection with her subsequent acts.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.